UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENNIFER S.,

                 Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

1:23-CV-01053 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Jennifer S. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 7; Dkt. 9), and Plaintiff's reply (Dkt. 10). For the reasons discussed below, the Commissioner's motion (Dkt. 9) is granted, and Plaintiff's motion (Dkt. 7) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on June 11, 2020. (Dkt. 3 at 24, 461).[1]  In her application, Plaintiff alleged disability beginning on June 29, 2017, due to post-traumatic stress disorder, bipolar disorder, panic and anxiety attacks, hypothyroidism, high blood pressure, back spasms, sciatica, and attention deficit hyperactivity disorder. (*Id.* at 24, 462-63). Plaintiff's application was initially denied on February 25, 2021. (*Id.* at 24, 525-36). A telephone hearing was held before administrative law judge ("ALJ") Barbara Dunn on March 25, 2022, and on July 7, 2022. (*Id.* at 24, 53-94). On August 3, 2022, the ALJ issued an unfavorable decision. (*Id.* at 21-47). Plaintiff requested Appeals Council review; her request was denied on August 15, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 9-15). This action followed.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

## I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on March 31, 2023. (Dkt. 3 at 27). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since June 1, 2020, the amended alleged onset date.[2] (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "cervical and lumbar degenerative disc disease ("DDD"), status-post hysterectomy; obesity; status-post carpal tunnel syndrome ("CTS") release; attention deficit and hyperactivity disorder ("ADHD"); posttraumatic stress disorder ("PTSD"); depressive disorder; anxiety disorder; bipolar disorder; and substance abuse disorder." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of hypertension, hypothyroidism, chronic headaches, esophagitis, gastroesophageal reflux disease ("GERD"), and right knee pain were non-severe. (*Id.* at 27-29).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 29). The ALJ particularly considered the criteria of Listings 1.15, 1.18, 12.02, 12.04,

---

[2]    At the March 25, 2022 hearing, the ALJ noted a prior June 14, 2019 partially favorable decision wherein Plaintiff requested, and was granted, a closed period of disability from August 11, 2012, though June 28, 2017. (*See* Dkt. 3 at 24). Plaintiff testified that she had returned to work as a personal care aide/home health aide from 2018 to May 2020. (*Id.*). At the July 7, 2022 hearing, Plaintiff's attorney requested to amend the alleged onset date to June 1, 2020, and the ALJ accepted this amendment. (*Id.* at 25).

12.06, and 12.15 in reaching her conclusion, as well as considering the effect of Plaintiff's obesity, as required by Social Security Ruling ("SSR") 19-2p.  (*Id.* at 29-33).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with some exceptions:

> lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; frequent handling and fingering with the right upper extremity; stand and/or walk 6 hours, sit 6 hours; no more than occasional climbing ladders, ropes or scaffolds or hazards such as unprotected heights or dangerous moving machinery; occasional climbing ramps and stairs, balance, stoop, kneel, crouch, and crawl; and is limited to simple routine work with no detailed or complex instructions; and she is limited to occasional public contact.

(*Id.* at 33).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 45).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of mail clerk, housekeeper/cleaner, and laundry sorter.  (*Id.* at 45-46).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 46-47).

## II.    The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing: (1) the ALJ failed to properly evaluate the opinion offered by family nurse practitioner (FNP) Robbins-Yonkin; (2) the RFC's omission of any limitations on supervisor or co-worker interaction is inexplicable and unsupported; and (3) the ALJ's physical RFC is based on

lay judgment. (Dkt. 7-1 at 1, 11-19). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A.    Assessment of FNP Robbins-Yonkin's Opinion

Plaintiff's first argument is that the ALJ failed to properly evaluate FNP Robbins-Yonkin's opinion with respect to Plaintiff's mental limitations pursuant to the regulatory factors.[3]  (Dkt. 7-1 at 11-14). In response, Defendant argues that the ALJ properly evaluated the medical opinion evidence from FNP Robbins-Yonkin. (Dkt. 9-1 at 16).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support

---

[3]    FNP Robbins-Yonkin also offered an opinion of Plaintiff's physical functioning (*see, e.g.*, Dkt. 3 at 43-44 (discussing FNP Robbins-Yonkin's assessment of Plaintiff's physical limitations)), which Plaintiff does not challenge in connection with this argument.

or contradict a medical opinion or prior administrative medical finding." *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 404.1520c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id*. at § 404.1520c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec*., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion.

20 C.F.R. § 404.1520c(b)(2).  The ALJ may—but is not required to—explain how she considered the remaining factors.  *Id*.

FNP Robbins-Yonkin completed a "Primary Source Statement" form on June 21, 2017.  (Dkt. 4 at 776-82).  FNP Robbins-Yonkin opined that Plaintiff's limitations would "constantly" interfere with the attention and concentration needed to perform even simple work tasks.  (*Id*. at 777).  Plaintiff could perform low-stress jobs.  (*Id*.).  Plaintiff's impairments caused "good days" and "bad days," and she would be absent from work for about four days per month.  (*Id*. at 779).  Large crowds could trigger Plaintiff's PTSD.  (*Id*.).  FNP Robbins-Yonkin assessed that Plaintiff was not precluded from performing the following categories of mental functioning: understand and remember very short and simple instructions; carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and be aware of normal hazards and take appropriate precautions.  (*Id*. at 781-82).  Plaintiff was precluded for less than ten percent of an eight-hour workday in the following categories of mental functioning: remember work-like procedures; maintain attention for two-hour segments; interact appropriately with the general public; and set realistic goals or make plans independently of others.  (*Id*.).  Plaintiff was precluded from 11 to 20 percent of an eight-hour workday in the following categories of mental functioning: understand and remember detailed instructions; carry out detailed instructions; work in coordination with or proximity to

others without being unduly distracted; respond appropriately to changes in a routine work setting; travel to unfamiliar places or use public transportation; and deal with normal work stress. (*Id.*). Finally, Plaintiff was precluded for more than 20 percent of an eight-hour workday for the following categories of mental functioning: complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and accept instructions and respond appropriately to criticism from supervisors. (*Id.*).

The ALJ discussed this opinion in the written determination, noting that she found it to be partially persuasive:

> I find that this opinion by FNP Robbins-Yonkin is partially persuasive but that the overall record does not support the opinion regarding Category III to IV limitations. As noted above, the primary care provider records generally do not include any notations of full MSEs, with findings only relating to abnormalities in mood and affect. Moreover, the relatively minimal treatment records with mental health specialists, including one visit with psychiatrist Dr. Godzala, one visit with psychiatric nurse practitioner Ms. Greis, and the initial assessment with therapist Ms. Krebs, showed essentially unremarkable MSEs.

(Dkt. 3 at 43).

Plaintiff contends that the ALJ's characterization of the record as having "relatively minimal treatment records with mental health specialists" is not accurate, because the ALJ ignored treatment notes in the record. (Dkt. 7-1 at 12). As an initial matter, an ALJ is not required to discuss every shred of evidence in the record. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." (citation omitted)). Here, the ALJ discussed the evidence of Plaintiff's mental health conditions at length (*see*

Dkt. 3 at 30-32, 35-39), including by acknowledging Plaintiff's own reports of her limitations and other evidence in the record supporting both less and more restrictive limitations than those included in the RFC. To the extent there was other evidence in the record suggesting more severe assessments of Plaintiff's mental functioning, where there is conflicting evidence in the record, it is the ALJ's duty to consider and weigh those discrepancies—and it is not the Court's function to re-weigh the evidence. *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Plaintiff's argument amounts to no more than her mere disagreement with the RFC, which is not sufficient for remand.

Plaintiff also argues that the ALJ erred in determining that the record lacked full mental status examinations, and that the silence of records on an issue does not translate to the absence of limitations. (Dkt. 7-1 at 13). The ALJ was entitled to consider the minimal formal treatment and mental status examinations in assessing the supportability of Plaintiff's own assessment of her limitations. (*See* Dkt. 3 at 35 (noting that for Plaintiff's mental impairments, "most of her treatment consists of prescriptions for psychotropic medications from her primary care providers, who did not document formal MSE at these visits," and concluding that "the relatively minimal treatment with mental health specialists generally shows minimal remarkable findings on the MSEs, along with concurrent reports of activities that are contrary to her allegations")); *see also Holdridge v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 316, 325 (W.D.N.Y. 2018) ("It was proper for the ALJ to consider Plaintiff's . . . conservative treatment in evaluating his credibility."). Further, it is

Plaintiff's ultimate burden to demonstrate disability and limitations beyond those already assessed in the RFC, and Plaintiff has failed to point to any evidence justifying the inclusion of greater limitations than those already included in the RFC. *See Ashley R. v. Comm'r of Soc. Sec.*, No. 1:21-cv-818-DB, 2023 WL 7130560, at *7 (W.D.N.Y. Oct. 30, 2023) ("[T]he burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner."). Accordingly, the fact that the ALJ noted that Plaintiff's treatment for her mental impairments was conservative does not require remand.

Plaintiff further argues, without providing any additional detail, that the ALJ "cannot be said to have properly considered the factor of supportability." This argument is belied by the record. The ALJ specifically noted that other evidence in the record—such as mental status examinations, which had findings only relating to mood and affect—did not support that Plaintiff was unable to work. (Dkt. 3 at 43; *see also id*. at 36 (discussing April 9, 2021 examination, wherein Plaintiff was anxious, but also cooperative, articulate, and had fluent speech); *id*. (discussing July 26, 2021 examination, wherein Plaintiff had a depressed mood and affect, but she also had appropriate behavior and no thought disorder); *id*. at 36-37 (discussing August 25, 2021 mental status examination, which was remarkable only for poor hygiene in the context of being sick and depressed mood, but that Plaintiff had "good eye contact, relaxed posture, normal activity, cooperative and friendly attitude, normal speech, intact orientation, appropriate thought content, logical thought process, normal 'cognitive status,' no perceptual disturbances, and fair insight and judgment")). As explained above, the ALJ discussed the evidence in the record at length, and therefore the

Court can easily discern how FNP Robbins-Yonkin's opinion of Plaintiff's functioning is supported by the record.  Accordingly, remand is not required on this basis.

### B.    Limitations on Interactions with Others

Plaintiff's next argument is that the ALJ erred because she omitted limitations for supervisor or co-worker interaction from the RFC.  (Dkt. 7-1 at 14).  In response, Defendant contends that substantial evidence supports the RFC finding, including limitations addressing Plaintiff's ability to interact with others.  (Dkt. 9-1 at 14).  The assessed RFC limits Plaintiff to performing simple, routine work with no detailed or complex instructions, and with occasional public contact.  Contrary to Plaintiff's implication, these mental limitations are well-supported by the record.

While the ALJ acknowledged Plaintiff's own reports that she tried to avoid dealing with co-workers or supervisors (Dkt. 3 at 31), the ALJ further discussed other evidence in the record supporting that Plaintiff did not need such stringent limitations on her ability to interact with others.  For example, the ALJ noted Plaintiff's examinations, which documented that she was cooperative and pleasant.  (*See, e.g.*, *id*. at 36 (at examination on April 9, 2021, Plaintiff had cooperative demeanor, with appropriate and pleasant facial expression); *id*. (on August 25, 2021, Plaintiff was cooperative and had a friendly attitude); *id*. at 37 (on June 21, 2022, Plaintiff had good mood, appropriate affect, good eye contact, and cooperative attitude)).

In addition, another mental assessment in the record performed by Susan Santarpia, Ph.D., revealed that Plaintiff had only a mild impairment in her ability to regulate emotions, control behavior, and maintain wellbeing.  (Dkt. 3 at 43, *see also id*. 1069-73 (December

1, 2020 consultative examination with Dr. Santarpia)). Notably, Dr. Santarpia specifically found that Plaintiff could interact adequately with supervisors and co-workers. (*Id*. at 1071). As explained above, to the extent the record included conflicting evidence supporting further restrictions on Plaintiff's ability to interact with others, it was the ALJ's duty to consider and weigh those discrepancies. It is clear to the Court that the ALJ considered the conflicting evidence, and it is likewise clear how the ALJ arrived at the assessed RFC, including the limitations for interacting with others. Accordingly, remand is not required on this basis.

### C.    The Physical RFC

Plaintiff's final argument is that the physical RFC was based on the ALJ's lay judgment. (Dkt. 7-1 at 15). Specifically, Plaintiff argues that the ALJ assessed a highly specific RFC, which she did not explain and which did not track any of the physical opinion evidence. (*Id*. at 15-17). In response, Defendant argues that the ALJ properly evaluated the entire record, including Plaintiff's medical treatment, medical opinions, and activities of daily living in arriving at the physical RFC finding. (Dkt. 9-1 at 15-16).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id*., an ALJ is not a medical professional, and therefore he "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted). However, at bottom, "[a]n

RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).  In arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted).

Here, the ALJ assessed an RFC limiting Plaintiff to light work with additional limitations.  The assessed RFC is supported by evidence in the record, including medical opinion evidence.  For example, Nikita Dave, M.D., the consultative examiner, opined that Plaintiff may have mild-to-moderate limitations for heavy lifting and carrying, as well as mild limitations for repetitive bending forward, due to her lumbar spine impairment.  (Dkt. 3 at 1075-79).  The ALJ explained that she found this opinion partially persuasive, including because it was generally consistent with the overall evidence of record, such as the diagnostic MRIs of the lumbar and cervical spine which showed degenerative disc disease.  (*See id*. at 44).  The ALJ also discussed the opinions offered by the state agency

medical consultants, J. Koenig, M.D. and C. Krist, D.O., who opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit for about six hours, stand and/or walk for about six hours, and perform occasional stooping. (*Id*.). The ALJ explained that she found these opinions to be generally persuasive, since they were supported by the record, provided a detailed rationale, and were supported by diagnostic MRIs of the lumbar and cervical spine, which showed degenerative disc disease. (*Id*.). The assessment of mild-to-moderate limitations is generally consistent with an RFC for light work. *See, e.g., Bethany A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1267 (WBC), 2022 WL 170405, at \*4 (W.D.N.Y. Jan. 18, 2022) ("[C]ourts within the Second Circuit have found that a doctor's assessment of 'mild' and 'moderate' limitations supportive of an RFC for light work." (collecting cases)). Here, many of the limitations included in the RFC—including those for lifting, carrying, sitting, standing, walking, bending, and stooping—are directly supported by the opinions offered by Dr. Dave, Dr. Koenig, and Dr. Krist.

Plaintiff also contends that the ALJ relied on "raw medical data" in finding FNP Robbins-Yonkin's assessment of Plaintiff's physical limitations not supported by the record. (Dkt. 7-1 at 16). FNP Robbins-Yonkin opined that Plaintiff could walk for zero to one city block without pain or rest, sit for 15 minutes at one time for a total of less than two hours, stand for 15 minutes at one time, stand/walk for less than two hours total, must get up every 45 minutes for 10 minutes, required a job that permits shifting positions at will, and would require unscheduled breaks four to five times per day, lasting 10 minutes each. Plaintiff had to elevate her legs at 90 degrees while sitting. Further, Plaintiff could lift and/or carry less than 10 pounds frequently, rarely climb ladders, and could

occasionally twist, stoop, bend, crouch, squat, or climb stairs. (Dkt. 3 at 43-44; *see also* Dkt. 4 at 777-79). The ALJ found this opinion not persuasive, explaining that while imaging studies of the lumbar and cervical spine showed degenerative disc disease, other treatment records from Plaintiff's pain management providers "generally showed no significant neurologic deficits and no indications of any significant deficits in balance or ambulation requiring the use of an assistive device." (Dkt. 3 at 44). Further, records from Plaintiff's primary care providers "generally documented sporadic complaints of pain in the lumbar and cervical spine and relatively minimal objective findings throughout the course of treatment." (*Id*.).

The Court does not find that the ALJ interpreted raw medical data in evaluating FNP Robbins-Yonkin's opinion. The ALJ's referencing findings from imaging studies—which the ALJ found supported some degree of limitation—does not amount to interpreting raw medical data. To support the RFC, the ALJ otherwise relied on treatment notes from medical sources in the record documenting that Plaintiff had sporadic complaints and relatively minimal objective findings for her physical limitations. And as explained above, the opinion evidence in the record supports an RFC for light work with additional limitations. In other words, the ALJ's discussion of the evidence makes plain that she believed that while some limitations were warranted due to Plaintiff's back issues, the severity of the limitations assessed by FNP Robbins-Yonkin—including that she could walk less than one block—were not supported by the record.

Finally, to the extent Plaintiff contends that the assessed RFC is *more* restrictive than the assessments of Plaintiff's physical limitations in the record (*see* Dkt. 7-1 at 17

(acknowledging that the ALJ assessed an RFC that was more restrictive than the reviewing opinions)), that fact does not require remand.  *See Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." (internal quotation marks and citations omitted)); *Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("[T]he fact that the ALJ's RFC assessment did not perfectly match [the consultative examiner's] opinion, and was in fact more restrictive than that opinion, is not grounds for remand.").

In sum, the physical RFC and Plaintiff's ability to perform light work with additional limitations is supported by the evidence in the record.  While the assessed RFC does not perfectly mirror any one medical opinion, it is well-settled that an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Matta*, 508 F. App'x at 56.  Accordingly, remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  March 24, 2025
        Rochester, New York